NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0842n.06
Filed: October 12, 2005

No. 04-3340

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| MICHAEL GOLDSBY, | ) | |
| | ) | ON APPEAL FROM THE |
| *Petitioner-Appellant,* | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| UNITED STATES OF AMERICA, | ) | |
| | ) | **O P I N I O N** |
| *Respondent-Appellee.* | ) | |

BEFORE:     NELSON and SUTTON, Circuit Judges; ZATKOFF, District Judge[*]

**Lawrence P. Zatkoff, District Judge.**  Petitioner-Appellant Goldsby appeals the district

court's denial of his motion, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence

of 360 months, which was imposed after a jury found him guilty of possession of cocaine base, in

violation of 21 U.S.C. § 841.  Goldsby claims that he did not receive effective assistance of counsel,

his case should have been severed from his co-defendants, he was improperly labeled a career

offender during sentencing, and his conviction under Title 21 is void.  For the following reasons,

we **AFFIRM** the judgment of the district court.

**I.  BACKGROUND**

**A.  Factual History**

_____

[*]The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern District
of Michigan, sitting by designation.

On the morning of December 28, 1996, Officers Sulzer and Knapp of the Cleveland Police Department saw Michael Goldsby standing outside a car with no shirt on and his pants around his ankles, using a hat to wipe fecal matter from his groin. The officers told Goldsby to pull up his pants and produce identification. They also observed a passenger in the car, whom they kept under surveillance as they dealt with Goldsby. When Goldsby failed to produce identification, he was searched for weapons and placed in the squad car. Officer Sulzer then approached the passenger, a female, who was also unclothed and was unresponsive to questioning. Officer Sulzer observed fecal matter on the seat and floor of the car. The woman was placed in the squad car with Goldsby, where she eventually identified herself as Leah Batchler. The officers ran warrant checks on Goldsby and Batchler. The search revealed no warrants for Ms. Batchler, who was allowed to leave. However, the search for Goldsby revealed several outstanding contempt warrants for traffic violations. The search also revealed that Goldsby had no driver's license. The officers then arrested Goldsby and arranged for the vehicle to be towed.

Before the vehicle was towed, Officer Sulzer inventoried its contents and discovered a cellular phone and black leather jacket in the driver's seat. He asked Goldsby about the phone and jacket, and Goldsby claimed them. After arriving at the police station, Sulzer searched the jacket and found a plastic baggie containing 23 rocks of a hard white substance, later found to be 5.88 grams of cocaine base.

During another drug arrest, a suspect made statements implicating Goldsby in a drug ring. Goldsby was indicted by a federal grand jury along with several other defendants and charged with conspiracy to possess with intent to distribute cocaine base, in violation of 21 U.S.C. § 846 (Count

2

1), and possession with intent to distribute 5.88 grams of cocaine base, in violation of 21 U.S.C. § 841 (Count 2). On August 28, 1997, Goldsby was convicted of both counts.

**B. Procedural History**

Goldsby appealed his conviction to this Court, claiming the evidence was insufficient to support the conviction on either count. On January 4, 2000, this Court vacated the conspiracy conviction, finding insufficient evidence. However, this Court found sufficient evidence to support the possession with intent to distribute conviction. *See United States v. Austin*, No. 97-4386, 2000 U.S. App. LEXIS 201, *59 (6th Cir. 2000). On August 31, 2000, Goldsby was resentenced. As a career offender under the U.S. Sentencing Guidelines, Goldsby was sentenced to 360 months of incarceration, followed by eight years of supervised release. Goldsby appealed his sentence, claiming that the Guidelines were applied incorrectly, the district court was unaware it could make a downward departure, and his sentence violated the Eighth Amendment. This Court rejected Goldsby's claims and affirmed his sentence.

On August 19, 2003, Goldsby filed a motion to vacate, set aside or correct his sentence, pursuant to 28 U.S.C. § 2255. Goldsby claimed that he received ineffective assistance of counsel, he was improperly tried with the other defendants on the conspiracy charge, and two of the prior convictions used to classify him as a career offender were invalid. Goldsby also claimed his conviction was void due to Congress's failure to enact Title 21 into positive law, i.e. ratify its language of codification in the United States Code. On January 26, 2004, the district court denied the motion without holding an evidentiary hearing. On February 9, 2004, Goldsby filed a Notice of Appeal, and this Court issued a certificate of appealability on September 3, 2004.

3

## II. ANALYSIS

### A. Standard of Review

When reviewing a district court's denial of a § 2255 motion, the appellate court reviews legal conclusions de novo and factual findings for clear error. *Regalado v. United States*, 334 F.3d 520, 523-24 (6th Cir. 2003). A district court's decision to not hold an evidentiary hearing is reviewed for abuse of discretion. *Williams v. Bagley*, 380 F.3d 932, 977 (6th Cir. 2004). The burden is on the habeas petitioner to prove his case by a preponderance of the evidence. *Ashley v. United States*, 17 Fed. Appx. 306, 308 (6th Cir. 2001).

### B. Ineffective Assistance of Counsel

To succeed on an ineffective assistance of counsel claim, the petitioner must meet both prongs of the *Strickland* test. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). The first prong requires the petitioner to "show that counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The second prong requires petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The test is stringent: "'[t]he reviewing court's scrutiny of counsel's performance is highly deferential,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Carson v. United States*, 3 Fed. Appx. 321, 324 (6th Cir. 2001) (citations omitted). The petitioner must prove that his counsel was so "thoroughly ineffective that defeat was 'snatched from the jaws of victory.'" *Thelen v. United States*, 131 Fed. Appx. 61, 63 (6th Cir. 2005) (citation omitted). Goldsby claims he received ineffective assistance of counsel for the five reasons discussed below. He also claims that the district court erred in not holding an

4

evidentiary hearing.

### 1. Failure to Investigate and Call a Defense Witness

Goldsby claims that counsel was ineffective for failing to investigate and call Ms. Batchler as a defense witness. Goldsby suggests that Ms. Batchler placed the drugs in his jacket pocket when he was being taken to the squad car. To succeed on this claim, Goldsby must demonstrate it was objectively unreasonable for counsel to not investigate and call Ms. Batchler as a witness, and that the result of his trial would have been different absent this error.

Defense attorneys do not have an absolute duty to investigate. The *Strickland* Court held that counsel could discharge the duty to investigate with "a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. This Court has noted that:

> While the temptation to rely on hindsight is particularly strong in the context of ineffective assistance claims based on counsel's failure to investigate, the court must conclude that counsel's strategic choices made after less than complete investigation are not constitutionally deficient if a reasonable professional judgment supports the limitations on investigation.

*Carson*, 3 Fed. Appx. at 324. It is highly unlikely that the testimony of Ms. Batchler would have aided Goldsby. In order to provide helpful testimony, Ms. Batchler would have had to incriminate herself, an improbable scenario. It is far more likely that Ms. Batchler would have supported the Government's contention, that the drugs were Goldsby's. Thus, calling Ms. Batchler as a witness would in all likelihood have been positively harmful to Goldsby's case. In addition, the circumstances of the encounter with the police make it unlikely she could have planted the drugs, as she was under surveillance while the police dealt with Goldsby. J.A. at 179. Given these facts, and the deference given to counsel's judgment, it was a reasonable decision to forego an investigation of Ms. Batchler, and spend the time on more promising avenues of investigation. In

5

cases where this Court has found a failure to investigate was objectively unreasonable, the apparent value of the witness was far greater than in this case. For example, in *Towns*, the potential witness had told police that someone other than the defendant had committed the crime. *Towns*, 395 F.3d at 253. Thus, it was ineffective assistance for counsel to fail to meet with the witness. In contrast, in the current case there is nothing that would have led counsel to believe that Ms. Batchler would be a promising avenue of investigation. Given the deferential standard applied to counsel's decisions, his failure to investigate and call Ms. Batchler as a witness was not objectively unreasonable.

In addition, Goldsby cannot meet the second prong of the *Strickland* test. To meet the second prong, Goldsby must show prejudice, i.e. that the outcome would have been different but for his counsel's ineffective assistance. Even if counsel's performance was deficient, relief will not be granted unless petitioner was actually prejudiced. *Harbison v. Bell*, 408 F.3d 823, 830 (6th Cir. 2005). Bare allegations of prejudice are not sufficient; the petitioner must produce enough evidence to demonstrate a reasonable probability that the outcome would have been different. In *Carson*, this Court denied habeas relief, since although the petitioner claimed counsel should have conducted interviews and called certain witnesses to provide an alibi, he did not provide any evidence regarding the witnesses. *Carson*, 3 Fed. Appx. at 324. In contrast, in a case where this Court did find prejudice, the petitioner produced a deposition of the witness showing the witness possessed information that would have been useful at trial. *Clark v. Redman*, No. 86-2050, 1988 U.S. App. LEXIS 17616, *3 (6th Cir. 1988). Goldsby's case is much more similar to *Carson*. Goldsby has produced no evidence showing that Ms. Batchler's testimony would have been favorable to him. In fact, as discussed above, in all likelihood her testimony would have been unfavorable. Since

6

Goldsby has produced no evidence creating a reasonable probability that the outcome of his trial would have been different but for counsel's alleged ineffective assistance, he cannot prevail on this claim. Since the record conclusively shows Goldsby is not entitled to relief, it was not error for the district court to refuse to hold an evidentiary hearing. *Carson*, 3 Fed. Appx. at 324.

### 2. *Advice Regarding Sentencing and a Plea Offer*

Goldsby claims counsel informed him that he faced a sentence of 10 to 15 years whether he pled guilty or went to trial.[1] In addition, Goldsby claims counsel failed to inform him that he could raise defenses at sentencing if he accepted a plea. Goldsby claimed that those representations caused him to forego pursuing a plea. Thus, he claims he received ineffective assistance of counsel, and the district court erred by not holding an evidentiary hearing.

Assuming that providing incorrect sentencing information was objectively unreasonable, Goldsby's claim fails because, as above, he cannot show prejudice. Goldsby has produced no evidence that the Government offered him a plea, was considering offering him a plea, or that he would have accepted a plea had one been offered. In cases where this Court has found ineffective assistance based on erroneous advice or a failure to inform, a deal was on the table. *See Smith v. United States*, 348 F.3d 545 (6th Cir. 2003); *Griffin v. United States*, 330 F.3d 733 (6th Cir. 2003).

In contrast, in a case where an ineffective assistance claim based on improper sentencing information was rejected, this Court noted the trial court had found there was no prejudice because there was no plea offer to accept. *Moss v. United States*, 323 F.3d 445, 467 (6th Cir. 2003). On appeal, the *Moss* petitioner argued that the prejudice standard should be lowered because counsel had a conflict of interest. This Court agreed that "the non-existence of a plea offer does not preclude

---

[1]Goldsby's actual sentence was 360 months.

the court from inquiring into whether the conflict of interest adversely affected counsel's ability to explore plea negotiations with the government." *Id.* at 468. However, even in the conflict situation, the Court required "that *the petitioner must demonstrate* that the government was willing to accept or extend an invitation to plea negotiations." *Id*. (emphasis added). In the current case, Goldsby has not only failed to demonstrate the existence of a plea offer, he has failed to demonstrate that the government was willing to engage in plea negotiations. Thus, he cannot demonstrate prejudice. Since Goldsby put forth no evidence to consider, the district court did not err by not holding an evidentiary hearing.

*3. Failure to Instruct the Jury on Goldsby's Right Not to Testify*

Goldsby claims he suffered ineffective assistance of counsel because the jury was not instructed that it could not use his failure to testify against him. However, the Tenth Circuit has held that "whether to request a particular instruction is within an attorney's tactical discretion" and "attorneys often decide not to request such an instruction because it calls attention to the defendant's silence. We do not find it improper that [the defendant's] attorney failed to request this instruction." *Coleman v. Brown*, 802 F.2d 1227, 1235 (10th Cir. 1986). In addition, this Court has specifically held that it was not ineffective assistance of counsel when the defendant's attorney did not object to the court's failure to give a jury instruction on the defendant's right not to testify, since "counsel's performance fell within the range of reasonable professional assistance." *Lewis v. Sowders*, No. 93-5325, 1993 U.S. App. LEXIS 25112, *4 (6th Cir. 1993). While it is conceivable that in some particular circumstances a defendant could be prejudiced by a failure to give jury instructions regarding his right not to testify, Goldsby has failed to produce any evidence showing that he suffered prejudice. Thus, this claim was properly rejected.

8

*4. Failure to Object to Use of "Crack" Instead of "Cocaine Base"*

Goldsby argues that he received ineffective assistance of counsel because counsel failed to object to the government's interchangeable use of the terms "cocaine base" and "crack." Goldsby claims that use of the term "crack" was impermissible because the lab report did not show the drugs in question to be crack. The district court correctly dismissed this claim as frivolous. The court noted that cocaine base and crack "are one and the same in criminal law." J.A. at 89. Strictly speaking, crack is a particular type of cocaine base, but for purposes of the sentencing guidelines, "cocaine base" means "crack." *United States v. Owusu*, 199 F.3d 329, 339 (6th Cir. 2000). In addition, Goldsby's contention that the lab report did not show the drugs to be crack needs an important qualification. The lab report didn't indicate that the drugs were *not* crack, it merely indicated they were cocaine base. J.A. at 67. Crack cocaine usually appears in a "lumpy, rocklike form." *Owusu*, 199 F.3d at 339. Since the cocaine base in question met that description, it is possible that it was in fact crack. In any event, Goldby has not produced any evidence showing he was prejudiced by the interchangeable use of the terms. Thus, the claim was properly denied as frivolous.

*5. Failure to Argue State Law Preemption*

Goldsby's final argument regarding his ineffective assistance of counsel claim is that counsel should have filed a motion to dismiss based on state law preemption. The district court properly dismissed this claim as frivolous. It is true that 21 U.S.C § 903 states that Congress did not intend to "occupy the field" of drug enforcement to the exclusion of the states. However, this merely means that states may pass drug laws alongside Congress, not that the federal government is impotent to prosecute drug offenders when state laws are in place. *See United States v. Love*, 59

9

Fed. Appx. 513, 514 (4th Cir. 2003) ("21 U.S.C. § 903 does not deprive the federal government from criminalizing drug crimes proscribed by states, and [petitioner's] claim is therefore meritless."). Failing to file a frivolous motion does not constitute ineffective assistance of counsel; thus, this claim was properly denied.

## C. Prejudicial Misjoinder

Goldsby argues that his possession count should not have been tried with his conspiracy count, especially given that his conspiracy conviction was vacated for insufficient evidence. Goldsby argues that evidence regarding the conspiracy had the potential to confuse the jury, and that "[h]aving lost their way on [the conspiracy count], the jury could have easily lost its way on the possession count." Appellant's Brief at 23.

However, as noted by the Government, Goldsby did not raise this issue on direct appeal. The Supreme Court has noted that "[o]ur trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless postconviction collateral attacks. To the contrary, a final judgment commands respect." *United States v. Frady*, 456 U.S. 152, 164-65 (1982). In keeping with that sentiment, this Court has noted that a habeas petition "is not a substitute for a direct appeal, and thus a defendant cannot use it to circumvent the direct appeal process." *Regalado*, 334 F.3d at 528. Thus, when claims are not presented during direct appeal, they may not be raised in a habeas petition unless the petitioner establishes cause and prejudice, or actual innocence. *Id*. The cause and prejudice standard is stringent; the Supreme Court has noted "the well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Frady*, 456 U.S. at 166. To demonstrate prejudice, the petitioner "must shoulder the burden of showing, not merely

10

that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 170.

Since Goldsby has not made a showing of actual innocence, he must meet the cause and prejudice standard. However, he is unable to do this. First, Goldsby has not made any showing regarding the cause of his failure to raise the joinder issue during direct appeal. Second, Goldsby cannot demonstrate prejudice. This Court specifically held that the evidence against Goldsby was sufficient to support the possession charge. *United States v. Austin*, No. 97-4386, 2000 U.S. App. LEXIS 201, *59 (6th Cir. 2000). This Court considered a similar case in *United States v. Sims*, 46 Fed. Appx. 807 (6th Cir. 2002). The defendant claimed, on direct appeal, that the "prejudicial spillover from the insufficient evidence for Counts Three and Four subjected him to retroactive misjoinder." *Id.* at 813. However, this Court held that since there was sufficient evidence to support the defendant's conviction, his misjoinder claim was moot. *Id.* Likewise, since this Court held there was sufficient evidence to support Goldsby's conviction, Goldsby cannot demonstrate prejudice.

Even if the Court were to consider the merits of the joinder claim, it would fail. Goldsby was properly indicted with the other defendants. When defendants are "alleged to have participated in the same act or transaction, or in the same series of acts or the same series of acts or transactions" such defendants may be named in the same indictment. Fed. R. Crim. P. 8(b). Furthermore, this Court has held that "[a]s a general rule, persons jointly indicted should be tried together . . . the jury must be presumed capable of sorting out the evidence and considering the cases of each defendant separately." *Murr v. United States*, 200 F.3d 895, 903-04 (6th Cir. 2000) (citations omitted). Claims of retroactive, or prejudicial misjoinder only succeed when "the defendant makes a showing of

11

compelling prejudice" or "the prosecutor acted in bad faith in bringing the initial conspiracy charge." *United States v. Warner*, 690 F.2d 545, 554 (6th Cir. 1982). The burden of showing prejudice is "very heavy," and "[a] defendant is not entitled to severance merely because he might have had a better chance of acquittal in a separate trial." *Stanford v. Parker*, 266 F.3d 442, 458 (6th Cir. 2001). Goldsby has not met this heavy burden; he merely alleges that "the jury could have easily lost its way on the possession count." Goldsby cannot demonstrate prejudice, especially since this Court found there was sufficient evidence to sustain the possession conviction. Furthermore, Goldsby has made no showing that the Government acted in bad faith. Thus, Goldsby's misjoinder claim fails on all grounds.

**D. Classification as a Career Offender**

Goldsby claims that he was constructively denied counsel during two of his prior state convictions; thus they were invalid and improperly used to classify him as a career offender. He argues that based on this claim the district court erred in not holding an evidentiary hearing. This argument, however, is without merit.

The district court is not required to hold an evidentiary hearing when the record conclusively shows petitioner is not entitled to relief. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996). Since Goldsby did not raise this issue on direct appeal, the cause and prejudice standard discussed above applies. Goldsby has not made any showing regarding a cause for his failure to raise this issue on direct appeal, and he also cannot show prejudice.

The Supreme Court has held that a defendant may not collaterally attack prior state convictions during a federal sentencing hearing. *Custis v. United States*, 511 U.S. 485, 497 (1994). The proper approach is to challenge prior convictions through state channels, or in a separate federal

12

habeas proceeding. *Id.* The only exception recognized in *Custis* was when a defendant was completely denied his right to counsel in the prior trial. *Id.* at 496. As noted by the Government and the district court, Goldsby was represented by counsel in each prior drug conviction. J.A. at 207-10.

Goldsby claims that he was constructively denied counsel in two of the prior cases and did not "knowingly, voluntarily, and intelligently" enter guilty pleas. This is strikingly similar to the situation in *Custis*, where the defendant claimed ineffective assistance of counsel, and that his guilty plea was not "knowing and intelligent." *Custis*, 511 U.S. at 496. The Court held that "[n]one of these alleged constitutional violations rises to the level of a jurisdictional defect resulting from the failure to appoint counsel at all." *Id.* Thus, since Goldbsy cannot show that he was not appointed counsel, his collateral attack must fail.

In addition, Goldsby's claim that he was constructively denied assistance of counsel is too vague to warrant an evidentiary hearing. Goldsby has provided no specifics as to how he was constructively denied assistance of counsel. The Sixth Circuit has held that:

> [T]he burden on the petitioner in a habeas case for establishing an entitlement to an evidentiary hearing is relatively light. However, it would be nonsensical to conclude that the petitioner could meet that burden simply by proclaiming his innocence. [The petitioner's] affidavit contains nothing to indicate that his counsel's performance was constitutionally infirm; therefore, the district court did not err in refusing to conduct an evidentiary hearing.

*Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999). In this case, Goldsby did nothing more than proclaim that he had been constructively denied assistance of counsel. This bare allegation was not sufficient to warrant an evidentiary hearing, and the district court properly denied relief on this claim.

## E. Validity of Title 21

Goldsby argues that since Congress has not enacted Title 21 into positive law, his conviction

under 21 U.S.C. § 841 is invalid. As the district court noted, this claim is frivolous.

Goldsby is referring to the fact that Congress has not approved the specific placement of the underlying legislation into Title 21 of the U.S. Code. However, this is by no means uncommon. The process works as follows:

> To enact a statute into positive law, Congress must specifically approve the language of the codification. The Office of the Revision Counsel submits each individual title of the Code to Congress for enactment. When Congress enacts a title of the Code into positive law, it puts its authoritative imprimatur on the language appearing in that particular title of the Code. As of 1998, less than half the titles in the Code had been enacted into positive law.

*Henriquez v. United States*, No. 03-Civ-478, 2003 U.S. Dist. LEXIS 8931, 2 n.2 (S.D.N.Y. 2003) (citations omitted). Congress's failure to approve the specific placement of Title 21 does not affect the validity of the underlying legislation. As the Tenth Circuit has noted, "the fact that Title 21 has not yet been 'revised, codified, and enacted into positive law' in accordance with the legislative agenda noted in the preface to the United States Code does not render the substantive law it records a nullity." *Wilson v. United States*, No. 90-6341, 1991 U.S. App. LEXIS 26092, *3-*4 (10th Cir. 1991). Thus, challenges on these grounds are frivolous. *Id*. at *2.

## IV. CONCLUSION

For the reasons stated above, we **AFFIRM** the district court's denial of Goldsby's motion to vacate, set aside or correct his sentence.